b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| TONY CHARLES, Plaintiff | CIVIL DOCKET NO. 1:23-CV-00784 |
| VERSUS | DISTRICT JUDGE DOUGHTY |
| BILLY JOE HARRINGTON, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are Motions to Dismiss filed by Defendants: Melissa Cloutier ("Cloutier"), Antonio Conday ("Conday"), Friends All United for Natchitoches Animals ("FAUNA"), Dexter Martin ("Martin"), and Juanita Murphy ("Murphy") (ECF No. 14); Billy Joe Harrington ("Harrington") ("ECF No. 14); and Adam Llorance ("Llorance"), Joe Soloman ("Solomon"), and Stuart Wright ("Wright") (ECF No. 16).

Because Charles's claims are time-barred, and Defendants Cloutier, Conday, FAUNA, Martin, and Murphy are not state actors, Defendants' Motion to Dismiss (ECF No. 4) should be GRANTED.

Because Charles' claims are time-barred, and Charles lacks standing to sue Defendants Wright, Llorance, and Solomon for failing to investigate and charge Murphy, Cloutier, and Martin, Defendants' Motion to Dismiss (ECF No. 16) should also be GRANTED.

And because Charles's claims against Harrington have been voluntarily dismissed (ECF No. 23), Harrington's Motion to Dismiss (ECF No. 14) should be DENIED AS MOOT.

I. Background

Plaintiff Tony Charles ("Charles") filed this *pro se* action pursuant to 28 U.S.C. § 1983 and supplemental state laws asserting claims of trespass, invasion of privacy, false accusations (or abuse of process), and discrimination. Charles sued Natchitoches Parish Sheriff Wright in both his official and individual capacities. He sued Sheriff's Deputies Llorance and Soloman in both their official and individual capacities. And he sued FAUNA (a Louisiana non-profit animal advocate group that provides non-lethal assistance in relocating animals found to be in danger of abuse), Murphy (a director of FAUNA), Melissa Cloutier (employed by or associated with FAUNA), Dexter Martin ("Martin") (associated with FAUNA), Conday (a private citizen who assisted FAUNA), and Natchitoches Parish District Attorney Harrington, as well. ECF No. 1. Charles seeks monetary damages.

Defendants filed three Motions to Dismiss. ECF Nos. 5, 14, 18. Charles opposed two of those motions. ECF Nos. 19, 24.

II. Law and Analysis

    A. Harrington's Motion to Dismiss should be dismissed as moot.

Harrington filed a Motion to Dismiss. ECF No. 14. In response, Charles filed a Motion to Voluntarily Dismiss his claims against Harrington (ECF No. 21), which

was granted (ECF No. 23). Therefore, Harrington's Motion to Dismiss (ECF No. 14) should be denied as moot.

### B. Murphy, Cloutier, Martin and FAUNA are not state actors.

Murphy, Cloutier, Martin and FAUNA filed a Motion to Dismiss (ECF No. 5), contending they are not state actors within the purview of § 1983. Charles asserts claims under both § 1983 and state law.

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. *See* 42 U.S.C. § 1983. A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 930 (1982). "Purely private conduct, no matter how wrongful, is not within the protective orbit of § 1983." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948).

"The traditional definition of acting under color of state law requires that the defendants in a §1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the state or by a person for whom the state is responsible and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (citing *Lugar,* 457 U.S. at 937 n. 18). "Thus, generally, a public employee acts under color of

3

state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 49 (holding that a private doctor under contract with the state to supply medical services to prisoners was a state actor).

Charles has neither shown nor alleged that Murphy, Cloutier, Martin and FAUNA were state actors. Nor has he shown that they were working in conjunction with or under the direction of the Sheriff or the District Attorney. Accordingly, his § 1983 claims against them should be dismissed.

### C. Charles's claims are time-barred.

All Defendants have raised the defense that Charles's civil rights and state law claims are time-barred. ECF No. 4, 16.

Section 1983 actions and state law tort claims in Louisiana are governed by a one-year prescriptive period. *McGregor v. LSU Board of Supervisors*, 3 F.3d 850, 863 (5th Cir. 1993), cert. den., 510 U.S. 1131 (1994); *Moreau v. St. Landry Parish Fire District No. 3*, 413 F. Supp. 3d 550 (W.D. La. 2019), *aff'd*, 808 Fed. Appx. 225 (5th Cir. 2020); La. C.C. art 3492. State law supplies the applicable limitations period and tolling provisions in federal actions. *See Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). This prescriptive period commences to run from the date injuries or damages are sustained, *Washington v. Breaux*, 782 F.2d 553, 554 (5th Cir. 1986) ) or, under the doctrine of *contra non valentum*,[1] from

---

[1] The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred. *See McGregor*, 3 F.3d at 866.

the time the plaintiff knew or could reasonably have known he had a cause of action, *McGregor*, 3 F.3d at 865; *see also Corsey v. State Department of Corrections*, 375 So.2d 1319, 1322 (La. 1979).

Charles contends he was informed by a neighbor that there were three trespassers on his property–Conday, Martin and Cloutier–on January 15, 2022. ECF No. 1 at 4. Later that day, Deputy Llorance and the three original trespassers entered Charles property to place a doghouse on it, despite the fact that there was already a doghouse of the same type there. ECF No. 1 at 4.

On January 16, 2022, Charles was informed by his brother that there were three trespassers on his property again. ECF No. 1 at 4. Charles found Cloutier, Conday, and Martin on his property, and told them to leave and not return. ECF No. 1 at 4.

On January 17, 2022, Charles was informed by two other neighbors that the trespassers had re-entered his property, and that two of them, who had previously been warned to keep out, had parked on the neighbor's property. ECF No. 1 at 5. Later that day, Deputy Solomon walked through Charles's property, in relation to a complaint about animal abuse and neglect. ECF No. 1 at 5. Charles contends that Deputy Solomon said he did not find any problems and that FAUNA, Murphy, and Martin had made a false complaint. ECF No. 1 at 6.

On January 21, 2022, Charles made a complaint to the Sheriff about the repeated trespasses on his property. ECF No. 1 at 5. On January 22, 2022, Deputy

5

Solomon went again to Charles's property, to investigate a complaint as to Charles's horse, dog, and puppies. ECF No. 1 at 6. Deputy Solomon found no abuse or neglect of any animals. ECF No. 1 at 6.

On January 25, 2022, Defendant Conday was interviewed by Deputy Shirley Amber pursuant to an investigation for criminal trespass, La. R.S. 14:63. ECF No. 1 at 6. On the same date, Charles told Deputy Amber that he had told Murphy, Martin, Cloutier, and Conday to stop trespassing on his property. ECF No. 1 at 6.

Charles contends that, although Conday (a black male) was cited for trespass, Martin, Cloutier, and Conday (all white) were not. ECF No. 1 at 6. Deputy Solomon advised Charles that the Sheriff had told him to close the file as soon as possible. ECF No. 1 at 7.

As alleged in Charles's Complaint, the trespasses and false complaint/abuse of process against him took place in January 2022. The decision not to investigate or charge Murphy, Cloutier, and Martin also took place in January 2022. Charles was aware of these activities and decisions in January 2022. Therefore Charles's Complaint, filed in June 2023, was filed after the expiration of the one-year prescriptive period.

However, Charles contends he was not aware of the "damage" he suffered until much later. Charles contends that, after discovering the "white Defendant trespassers" would not be prosecuted, he became mentally disturbed and paranoid, engaged in substance abuse for "a month or two," and sought and received in-patient

treatment and counseling. Charles was released from the hospital on September 9, 2022. Charles argues he was unaware he had suffered damages until he was released from the hospital.

The limitation period began to run when the Plaintiff knew or should have known his constitutional rights had been violated and state laws had been broken– that is when Charles sustained damages. Charles knew Defendants had trespassed and filed a false complaint against him in January 2022. Charles immediately attempted to resolve the matter by first telling the Defendants to stay off his property, and then filing a complaint against them with the Sheriff. Charles was also informed in January that only Conday had been investigated and charged. Because Charles knew of the alleged constitutional and statutory violations in January 2022, that is when the one-year limitation period began running.

As such, the prescriptive period expired in January 2023, well before Charles filed this Complaint. These claims are prescribed.

### D. Charles does not have standing to sue Sheriff Wright, Deputy Llorance, and Deputy Solomon.

Wright, Llorance, and Solomon also contend that Charles lacks standing to assert a claim against them for failing to investigate and charge Murphy, Cloutier, and Martin, the Caucasians who trespassed on his property. Only Conday, an African-American, was investigated and charged.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lefebure v. D'Aquilla*, 15 F.4th 650, 653 (5th Cir. 2021), *cert. den.*, 142 S. Ct. 2732 (U.S. 2022) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "First, the plaintiff must have suffered an 'injury in fact.'" *Id.* "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lefebure*, 15 F.4th at 652 *(citing Lujan*, 504 U.S. at 561; *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 43 (1976)).

"Under this established principle of standing, each of us has a legal interest in how *we* are treated by law enforcement—but not a legally cognizable interest in how *others* are treated by law enforcement. So people accused of a crime have an obvious interest in being treated fairly by prosecutors. And victims of crime have a strong interest in their own physical safety and protection. But victims do not have standing based on whether *other* people—including their perpetrators—are investigated or prosecuted." *Lefebure*, 15 F.4th at 652.

Charles was not injured by the charge brought against Conday. Conday was charged with trespass due to the complaint filed by Charles against Conday, Martin, Murphy, and Cloutier. Even assuming for purposes of this motion that the allegations in Charles's Complaint are true–Charles was not charged. Therefore, Charles lacks standing to assert a claim that the charge against Conday was discriminatory.

8

Likewise, as stated above, Charles also does not have standing to sue the Sheriff (in his official or individual capacity) for failure to investigate or charge Murphy, Martin, and Cloutier for trespassing on his property. *See Lefebure*, 15 F.4th at 652 ("[V]ictims do not have standing based on whether *other* people—including their perpetrators—are investigated or prosecuted.").

Because Charles does not have standing to sue Wright, Llorance, or Solomon for failing to investigate or charge Murphy, Cloutier, and Martin, their Motion to Dismiss (ECF No. 16) should be granted.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motions to Dismiss (ECF Nos. 4 & 16) be GRANTED and that Charles's action against FAUNA, Murphy, Martin, Cloutier, Conday, Wright, Llorance, and Solomon be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Harrington's Motion to Dismiss (ECF No. 14) be DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy

of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __12th__ day of February 2024.

Joseph H.L. Perez-Montes
United States Magistrate Judge